UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF                           ]
THE EXTRADITION OF                         ]        No.    10m-1013-JGD
DAVID E. CASTANEDA CASTILLO                ]

**GOVERNMENT'S REPLY IN OPPOSITION TO MOTION
FOR RELEASE PENDING EXTRADITION**

**Introduction**

David Castaneda Castillo's ("Castaneda") Application for Bail fails to state any "special circumstances" sufficient to overcome the strong presumption against bail in extradition proceedings.  He should be detained pending completion of these proceedings.

Extradition, procedurally speaking, is not complex:  pursuant to a treaty, a requesting country asks the United States to produce a person wanted for crimes in that country.  Assuming treaty requirements are met, the United States finds and arrests the person, and transfers him to the requesting country.  Pending extradition, the person is nearly always detained, since he or she usually has a great incentive to flee to avoid prosecution in another country, and the United States is obligated by treaty to produce the person.

Castaneda tries to distract the Court from this straightforward process by focusing on his immigration proceedings, during which he fought vigorously to avoid being sent back to Peru. His heavy reliance on the immigration proceedings is misguided and, at times, disingenuous. Removal proceedings are fundamentally different from extradition proceedings. Removal is a unilateral action taken by the United States  government to enforce domestic immigration laws; flight during these proceedings frustrates only the United States.  Extradition, however, is a national treaty obligation to deliver someone to another country if specifically negotiated

requirements are met: the wanted person is arrested, a judge in the United States confirms that probable cause exists (among other things), and the person is transferred to foreign custody upon surrender by the Secretary of State. If a single domestic judge were to release a wanted person – in this case an alleged war criminal nationally known in Peru – and that person fled, the United States would be embarrassed and its foreign relations potentially harmed. *See, e.g., Wright v. Henkel*, 190 U.S. 40, 62 (1903). Hence the rarity of bail in these cases, and hence the First Circuit's reversal of district court orders allowing bail in the two most recent First Circuit decisions ruling on the subject.

## Argument

### I. Castaneda Misuses Findings from the Immigration Proceedings to Imply That He Should be Released

Not only do the immigration court findings have no bearing in this proceeding, the facts Castaneda does cite are inaccurate. For example, Castaneda asserts in his memorandum that "the Department of Homeland Security conceded the fact that Petitioner himself was not in any way involved in the killing of civilians at Accomarca, was not a member of the patrol that did the killings, and was not in the vicinity at the time the killings took place." *Motion for Release* at 3, 14. Similarly, Castaneda cites an immigration court decision that states, "In this case, the only thing that is clear is that Castaneda did not massacre civilians at Accomarca." *Motion for Release* at 3. But this is the full quotation from the immigration court:

> Even assuming Castaneda established statutory eligibility for [immigration relief], *he would be barred from receiving such relief because he has failed to show, by a preponderance of the evidence, that he did not assist or otherwise participate in the persecution of others on account a statutorily-protected ground and that he had no prior or contemporaneous culpable knowledge of that persecution.* [citation omitted] The Court is well aware that at the time of the events in question, Peru was under attack by the Shining Path, "a revolutionary Marxist

>organization, well known for its energy and brutality." [citation omitted] However, as the First Circuit declared, "the deliberate massacre of civilians because of their perceived connection with or support for the Shining Path amount[s] to persecution." [citation omitted]
>
>In this case, the only thing that is clear is that Castaneda did not massacre civilians at Accomarca. [citation omitted]  *His role at Accmay is less clear. Likewise, what he knew about the massacre at Accomarca, both before and during, is not completely clear.*

*Decision of the Immigration Court* (July 14, 2008) at 27 (emphasis added) (attached to Castaneda's motion at Exhibit 6).  The immigration court went on to hold that Castaneda failed to prove that he did not order the killings of civilians at Accmay or know about the killings near Accomarca.  *Id.* at 28-29.  In short, the immigration courts in no way exonerated Castaneda of wrongdoing, they (and Castaneda in his motion) do not address the charges of kidnapping and forced disappearance, and the immigration findings have no bearing on whether the government of Peru can successfully prosecute Castaneda in a Peruvian civilian court for crimes (murder, kidnapping and forced disappearance) under Peruvian law.

**II.     The Procedural Aspects of the Immigration Proceedings Are Irrelevant to the Standards Governing Release in Extradition Matters**

Castaneda details for the Court the various bail determinations made during the immigration proceedings.  *See Motion for Release* at 4-6.  As noted in the government's initial filing, these findings are irrelevant.

First, Castaneda claims that the Court should consider whether he is a risk of flight or danger to the community and then, if he is neither, consider whether there are any special circumstances warranting his release.  *See Motion for Release* at 7.  Thus, Castaneda suggests that immigration findings on dangerousness and flight are relevant to the Court's determination here.  But this is wrong.  While some courts have followed this two-step process, *see, e.g., In re*

*Extradition of Molnar*, 182 F.Supp.2d 684, 687 (N.D. Ill. 2002) (cited by Castaneda), the vast majority have not; more importantly, the First Circuit does not follow this approach. *See United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) (assessing only whether petitioner could show special circumstances); *United States v. Williams*, 611 F.2d 914, 914-15 (1st Cir. 1979) (same, and disavowing considerations of whether person is "tolerable bail risk"); *Beaulieu v. Hartigan*, 554 F.2d 1, 1-2 (1st Cir. 1977) (warning that bail "should be approached with caution" and should only be granted in special circumstances).

Moreover, Castaneda implies that the cases show a trend toward release in extradition cases, but this is false. Castaneda quotes the trial court decision in *Beaulieu v. Hartigan*, 430 F.Supp. 915, 196 (D. Mass. 1977) (Tauro, J.), for the proposition that in recent cases bail has been the norm, *Motion for Release* at 9, but fails to mention that the First Circuit decision in that case took the unusual step of warning the district judge that bail in extradition cases "should be approached with caution," and only granted in "special circumstances." *Beaulieu*, 554 F.2d at 102. The government cited 29 cases in its opening brief, the majority modern. The petitioner was released in six of them.

Second, Castaneda does not meet any of the criteria he himself lists that might qualify as "special circumstances," see *Motion for Release* at 8: there has been no unusual delay in the extradition process; there is a suitable facility in which to detain Castaneda; there is no risk that his health will seriously deteriorate; and he cannot show a "high probability" of success on the merits (more on this below). As to "a likelihood that the extradition will take a considerable

amount of time," *id.*, this is not recognized as a "special circumstance" in the First Circuit,[1] nor is "a lack of diplomatic necessity to hold the defendant without bail." As to the availability of bail in the requesting country, the possibility that Peruvian officials might grant Castaneda bail *after* he has been returned to Peru does not relieve the United States of its obligation to ensure that he *gets* to Peru. If this Court releases Castaneda, it does so under a real risk that the United States may be unable to meet its treaty obligations. If the Peruvians release him during their criminal case, that is a decision they are allowed to make, and it will come after the United States has fully discharged its obligations.[2]

Third, even if dangerousness and flight considerations were relevant, past immigration court findings on these subjects are irrelevant. During his immigration proceedings, Castaneda certainly had no reason to flee, as his overriding goal was to be *allowed to remain* – legally – in the United States. But considering his demonstrated lack of success in resisting removal since 1993 – resulting in his most recent order requiring removal – coupled with the likelihood that he will be extradited to Peru to face severe criminal charges, Castaneda now has every reason to flee to avoid surrender to Peru. In short, Castaneda has spent five years of his life in ICE custody fighting to stay in the United States, but his efforts have only resulted in a recent

---

[1] *See Kin-Hong*, 83 F.3d at 525 (rejecting argument that extradition issues involving Hong Kong were so complex that release was warranted, noting that there has not yet been any unusual delay, and observing that issue could be revisited later in proceedings).

[2] Castaneda cites *In re Gonzalez*, 52 F.Supp.2d 725, 736 (W.D. La. 1999) for the proposition that the term "special circumstances" is flexible, and not limited to predetermined categories. *Motion for Release* at 8. This is technically true, in that detention is ultimately discretionary and a court could always be confronted with a unique fact pattern not addressed in previous decisions. But the *Gonzalez* court also re-affirmed what most courts say in these cases: that "[s]pecial circumstances must be extraordinary," and that "[t]he lack of flight risk alone does not constitute sufficient 'special circumstance.'" *Id.* at 735.

immigration ruling that he is removable, *and* he now knows that if he is sent to Peru he will be prosecuted for murder and kidnapping. Especially considering the stakes involved, there is no set of conditions that will ensure his appearance.

### III.     Castaneda's Various Other Arguments Do Not Justify Release, or Are Irrelevant to the Detention Issue

Castaneda presents a variety of other common extradition arguments in an effort to show that he has a "high probability" of succeeding at the final extradition hearing. But the number of arguments available to him does not increase his probability of success on any one of them, especially when he has admitted that he is the person wanted by Peru and to participating in key events surrounding the Accomarca massacre. *See Motion for Release* at 14; *Peruvian Request for Provisional Warrant* (Tab A to government's initial brief). For example, Castaneda's argument that the charges against him may not be justiciable under Peruvian law is a matter properly before the Peruvian court before which the charges are pending, and he has every right to raise that defense when he gets there. As to "double jeopardy" or "*non bis in idem,*" his extradition cannot be denied on that basis because he has not been convicted or acquitted of these crimes in the United States. *See, e.g., In re Extradition of Hurtado Hurtado*, 622 F. Supp. 2d 1354, 1356 (S.D. Fla. 2009) ("Because the treaty between the United States and Peru calls for double jeopardy protection only if the [fugitive] has been convicted or acquitted by the requested state, here the United States, double jeopardy is not a defense to the extradition of [petitioner] who was tried and acquitted in the requesting state, Peru.").[3] These kinds of defenses to extradition have been raised before by Castaneda's accomplices in the Accomarca Massacre, and

---

[3] *See also Extradition Treaty Between the United States of America and the Republic of Peru*, July 26, 2001, U.S.-Peru, art. IV(1)(a), S. TREATY DOC. NO. 107-6 (2002) (attached to the government's initial memorandum at Tab B).

they have failed.[4]

As to any "due process concerns," *Motion for Release* at 11, Castaneda has been in immigration custody for five and a half years because he aggressively litigated and appealed every aspect of his immigration case. It was of course his right to do so, but the resulting delay does not create a due process violation, any more than it would in a criminal proceeding. Castaneda may also litigate every aspect of this proceeding, thus causing delay, and just as surely, no valid due process claim – or basis for release – would result.

## Conclusion

Castaneda should be detained pending decision on whether he will be extradited to Peru.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney


By:   /s/ *Andrew Lelling*
      Andrew E. Lelling
      Assistant U.S. Attorney

Date:   April 9, 2010

---

[4] *See, e.g., In re Extradition of Hurtado Hurtado*, Extradition Certification and Order of Commitment, No. 08-22414-CIV-O'SULLIVAN (S.D. Fla. May 13, 2009) (magistrate judge's order finding Hurtado extraditable); *Hurtado Hurtado v. Eric Holder, et al.*, No. 09-21504-CIV-COOK/BANDSTRA (S.D. Fla. July 27, 2009) (magistrate judge report and recommendation rejecting habeus petition to prevent extradition, which raised various arguments, including under the ICCPR); *Hurtado Hurtado v. Eric Holder, et al.*, No. 09-21504-CIV-COOK/BANDSTRA (S.D. Fla. Feb. 26, 2010) (district court order adopting report and recommendation, and rescinding stay of extradition).

**Certificate of Service**

I hereby certify that on the above date this pleading was served on all parties of record using the ECF system.

/s/ *Andrew Lelling*
Andrew E. Lelling